CONSTANCE M. RUBIN, Respondent, v. NORMAN RUBIN, Appellant.

First Department, May 11, 1954.

*Myron Holtzman* of counsel (*Benjamin L. Greene*, attorney), for respondent.

*Norman Rubin,* appellant in person.

BERGAN, J. The respondent wife is a graduate nurse earning $65 a week in a dentist's office. The appellant husband is a lawyer admitted to the bar in 1951. The Domestic Relations Court has found that at the time of the trial in December, 1953, the husband's earnings were at the rate of about $70 a week.

An order was entered directing him to pay the wife $25 a week. The judicial redistribution of the income of the parties would mean, while their earnings remain at the present levels, that the wife would have $90 a week and the husband about half of that amount.

The marriage was contracted in March, 1953, and was ephemeral. The parties never resided together. The wife retained an apartment which she had shared with another woman before the marriage. The husband continued to live with his parents and stayed with the wife weekends. The marital relation con-

tinued in this fashion a few months until May, 1953, when it terminated.

The parties assign its failure to differing causes. The husband and wife are of diverse religious faiths. The husband is a Jew; the wife a Catholic. The members of their respective families were not told of the marriage when it occurred. The wife testified their delay in living together was, in part, " because of religion " and in part due to a desire to win the husband's mother to an acceptance of the marriage.

The record suggests the mother's strong opposition to it. Leaving the apartment in which she was living, the wife rented and furnished with her own money another apartment. The husband attributed the failure of the marriage to his opposition to incurring this expense. Whatever the deeper causes of the failure of the marriage may be, it is manifest that presently it is not succeeding. It is difficult to assess the blame.

The husband's legal work in 1953 was mainly as an employee for other lawyers. There is proof by his employers based upon actual records which seem reliable that at the beginning of 1953 he was receiving a salary of $35 a week and that in the fall he was receiving $50 a week. There were periods during the year in which he was not employed but he had some small additional income from personal legal work.

It seems probable that the court's finding of about $70 a week was somewhat higher than his actual earnings average for the whole year. On the other hand he bought a 1953 Chrysler automobile on installment credit and provided neither food nor shelter for his wife. He did, however, borrow money to pay a hospital bill for her treatment while she was ill after the marriage.

Appellant argues that since there is no danger that the wife will become a public charge and since there is no issue of the marriage, the Domestic Relations Court was without jurisdiction to enter the order. But the present statute in express language authorizes an order requiring a husband to support a wife without necessity for a showing that she may become a public charge (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1).

The statute is designed to provide a facility admitting greater judicial flexibility in reaching a just result in matrimonial controversies than often is possible under the rigid rules that are historically inherent in common-law concepts of actions for judicial separation and divorce which always depend on some sense of retribution for wrongdoing. Alimony in such actions is

given or denied as the court may be shown, or not shown, the wrong of an abandonment, an abuse, or an adultery. These actions share a concept of legal remedy for wrong quite usual in common-law forms of remedy.

But the approach to the problems of judicial solution to marital failure suggested by the Domestic Relations Court jurisdiction is the sense of the court of what may be justly done in the domestic situation of the parties. The basis of marital controversy is viewed as a condition of human failure rather than a legal wrong attributed with confidence and finality to one or the other of the parties.

This allows a very considerable latitude; and the domestic relations judicial establishment in this respect is in an experimental stage of its development. The legislative policy of the State expressed in the statute is that a husband is " declared to be chargeable with the support of his wife " (§ 101, subd. 1). But there is a contextual declaration in the same subdivision that would be quite inadmissible within our legal tradition. It is declared that the wife also is to be chargeable with the support of her husband under carefully limited conditions.

The power of the court to order a husband to support a wife " irrespective of whether either is likely to become a public charge ", found in subdivision 1 of section 92, is to be exercised within the frame of a precisely worded statute. While it is a jurisdiction unfettered of some crippling concepts which stood in the way of enlightened decision, the court is required to have a " due regard " for the " circumstances of the respective parties ". This broadly embraces the condition of the husband as well as of the wife. It is not necessarily dependent on a wrong that would be recognizable in a civil cause of action.

Where the husband and wife are apart for complex and not very easily demonstrated reasons; where there are no children; where the marriage is of such short duration as scarcely to have impressed itself on the lives of the parties; and where their earnings seem approximately the same, we think the redistribution of their income effected by the court's order here is somewhat too radical on the record before us. There ought to be a more evenly balanced apportionment of their present resources.

The order should be modified to direct that the husband provide $15 a week for the wife's maintenance and as thus modified affirmed, without costs.

PECK, P. J., and COHN, J., concur with BERGAN, J.; DORE and CALLAHAN, JJ., dissent and vote to affirm.

Order modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.

Republished decision, May 18, 1954.

Order modified in accordance with the opinion herein and, as so modified, affirmed. Opinion by BERGAN, J.

Present — PECK, P. J., COHN, CALLAHAN, BASTOW and BERGAN, JJ.; CALLAHAN and BASTOW, JJ., dissent and vote to affirm. Settle order on notice.*

* Also printed, 283 App. Div. 934.— [REP.